UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

HAWKINS CONSTRUCTION NORTH CAL INC.,

Plaintiff,

v.

GENERAL MOTORS LLC, et al.,

Defendants.

Case No. 2:25-cv-06828-SRM-SK

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [14]**

Before the Court is Plaintiff Hawkins Construction North Cal Inc.'s ("Plaintiff") Motion to Remand ("Motion"). Dkt. 14. Defendant General Motors LLC ("Defendant") opposes the Motion. Dkt. 18. Plaintiff filed a Reply in support of their Motion. Dkt. 19. Having considered the parties' briefing, the relevant legal authority, and the record in this case, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

On April 18, 2021, Plaintiff purchased a 2021 GMC Sierra 1500 ("Sierra"), which is a vehicle manufactured and distributed by Defendant. Dkt. 1-1 at 4. The purchase included an express written warranty, which stated that if the Sierra developed a nonconformity during the applicable warranty period, then Plaintiff could deliver it to Defendant's authorized service facilities for repair. *Id*. at 5. During Plaintiff's ownership

of the Sierra, various engine and electrical defects manifested that were covered by the Defendant's express written warranties. *Id*. Plaintiff alleges that these defects impaired the "use, value, and/or safety of the [Sierra]." *Id*. Plaintiff took the Sierra to an authorized service facility for diagnosis of the defects; however, Plaintiff alleges that the Sierra could not be serviced and repaired to conform it to the applicable express warranties after a reasonable number of opportunities to do so. *Id*. Further, Plaintiff alleges that Defendant's failure to promptly replace or make restitution to the Plaintiff, as required by California Civil Code § 1793.2(d), was willful and thus entitled Plaintiff to a civil penalty of up to two times the actual damages, pursuant to California Civil Code § 1794(c). *Id*.

On March 19, 2025, Plaintiff filed a Complaint in Los Angeles County Superior Court. Dkt 1 at 2. In the Complaint, Plaintiff alleges five separate causes of action against Defendant: (1) violation of California Civil Code § 1793.2(d)(2); (2) violation of California Civil Code § 1793.2(b); (3) violation of California Civil Code § 1793.2(a)(3); (4) violation of California Civil Code §§ 1792 and 1794 for the implied warranty of merchantability; and (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312. *See* Dkt 1-1 at 4–9. While the fifth cause of action arises under federal law, Plaintiff's first four claims are brought under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). *See* Dkt. 14 at 4. Defendant filed its answer on May 6, 2025. Dkt. 1 at 2.

On July 25, 2025, Defendant filed a notice of removal, alleging this Court has diversity jurisdiction over this action. *Id*. at 2–3. According to Defendant, Plaintiff is "a resident of San Jose, California" and "a business entity." Dkt 1-1 at 3–4. Defendant further alleges that it is a limited liability company whose sole member is General Motors Holdings LLC ("GM Holdings"). Dkt 1 at 3. General Motors Company ("GM") is the sole member of GM Holdings. *Id*. GM is a Delaware corporation with its principal place of business in Michigan. *Id*. Plaintiff did not dispute Defendant's allegation that it is a citizen of Delaware and Michigan. Dkt. 19 at 4. Thus, this Court accepts these statements as true.

On August 8, 2025, Plaintiff filed this Motion seeking to remand this case back to state court on the grounds that Defendant's removal was procedurally defective. Dkt. 14 at 4. Defendant opposes the Motion, arguing that the Complaint filed was indeterminate in showing federal subject matter jurisdiction and thus did not trigger Defendant's duty to remove under 28 U.S.C. § 1446(b)(1). Dkt. 18 at 7. Plaintiff, in its Reply, maintains that the Complaint included information more than sufficient for Defendant to ascertain removability and that Defendant's own preliminary investigation did not invoke a second thirty-day window. *See* Dkt. 19 at 2–5.

## II. LEGAL STANDARD

Federal courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, there are two types of federal subject matter jurisdiction: federal question jurisdiction and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. For federal question jurisdiction to exist, a plaintiff must plead a claim in the action that concerns a right "arising under" federal law. *Id.* § 1331. Federal subject matter jurisdiction may also include diversity jurisdiction, where the parties are citizens of different states and the amount in controversy exceeds the sum value of $75,000. *Id.* § 1332(a). For diversity jurisdiction to exist, there must be complete diversity among the parties, that is, each plaintiff must have different citizenship than each defendant. *Id.*

Generally, defendants may remove any state-court civil action over to the federal district court where the state action is pending. 28 U.S.C. § 1441(a). A defendant seeking to remove a case must file a notice of removal in federal court "containing a short and plain statement of the grounds for removal[.]" *Id.* § 1446(a). Section 1446(b) recognizes two thirty-day deadlines during which an action may be removed. The first deadline "only applies if the case stated by the initial pleading is removable on its face[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *see also id.* § 1446(b)(1). The second deadline only triggers when a defendant receives "an amended pleading, motion, order, or other paper" that makes a ground for removal "unequivocally clear and certain[.]" *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) (citing § 1446(b)(3)). When

neither 30-day window is triggered, a defendant may "remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Should there be any doubt as to the propriety of Defendant's removal, the district court must remand the case back to state court. *Id*. § 1447(c); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). Ultimately, the burden of establishing federal jurisdiction is on the party seeking removal. *Id.*

Plaintiff's central argument is that Defendant's removal was untimely under 28 U.S.C. § 1446(b) because it was filed more than thirty days after serving the Complaint. *See* Dkt. 14 at 8. In addition to the remedies available under the Song-Beverly Act for Defendant's alleged statutory violations, Plaintiff also requests an award of attorney's fees and costs under § 1447(c) incurred as a result of the allegedly improper removal. *Id.* at 12.

Defendant responds that neither the thirty-day deadline under § 1446(b)(1) nor the § 1446(b)(3) was triggered because the Complaint was indeterminate as to both Plaintiff's citizenship and the amount in controversy. *See* Dkt. 18 at 7. Instead, Defendant maintains that its removal was timely and proper on the grounds of its own preliminary investigation, which confirmed that Plaintiff's citizenship and the amount in controversy met the requirements for diversity jurisdiction. *See* Dkt. 18 at 25 (citing Dkt. 1 at 4–6). To support the timeliness of its Notice of Removal, Defendant asserts that the proper removal timeline to consider was the one-year outer limit of § 1446(c) for diversity-based actions. *Id.*

Defendant separately contends that the Complaint is indeterminate as to the MMWA's $50,000 threshold for federal question jurisdiction because Plaintiff fails to specify under which measure of damages remedies are being sought. *See* Dkt. 18 at 11, 15–19. Thus, Defendant asserts that Plaintiff's Complaint was indeterminate for ascertaining subject matter jurisdiction on both diversity and federal question grounds. However, the Court finds Defendant's arguments regarding diversity jurisdiction to be solely dispositive. Because this Court ultimately concludes that the Complaint did not trigger the removal

clock as to diversity jurisdiction, and that removal was therefore timely, it need not address Defendant's federal-question issue. Instead, the Court assesses the parties' arguments regarding Plaintiff's Complaint and Defendant's removal solely in the context of diversity jurisdiction.

**A. Determination of Removability from Plaintiff's Complaint**

Plaintiff first argues that removability was clear upon the service of the Complaint to the Defendant. *See* Dkt. 14 at 8. Specifically, Plaintiff points to allegations made as to the make, model, year, and VIN of the vehicle, which it contends allow Defendant "to ascertain an approximation of the [Sierra's] market value[.]" *Id.* at 9. Plaintiff further highlights that the Complaint listed statutory remedies sought under the Song-Beverly Act, including restitution for the purchase of the Sierra, civil penalties of two times actual damages, and attorney's fees. *Id*. Plaintiff contends that, as a sophisticated manufacturer applying "a reasonable amount of intelligence," Defendant could have plausibly alleged satisfaction of the amount in controversy requirement. Dkt. 19 at 4.

Notably, Plaintiff relies on *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) to support its proposition that a notice of removal requires only plausible allegations that the threshold requirements are met. It contends that the information provided in the Complaint was more than sufficient to form a plausible allegation and begin Defendant's 30-day removal deadline under § 1446(b)(1). Dkt. 14 at 9–10.

However, Plaintiff conflates two distinct standards. In *Dart* the court outlined a standard meant to guide the assessment of an action's removability, not to mandate it. The plausible allegation standard does not serve to trigger either of the thirty-day deadlines in § 1446(b) and impose an extra burden on a defendant. *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013) ("[W]hether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin."). Alternatively, under the bright-line approach adopted by courts in this District, the requisite inquiry is whether removability was facially ascertainable from the text of an initial complaint as filed. *See Harris v. Bankers Life &*

*Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005) ("[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

Here, just because the Defendant may have been able to determine the amount in controversy does not mean it was required to do so within thirty days. *See Dietrich v. Boeing Co.*, 14 F.4th 1089, 1094 (9th Cir. 2021) (reversing remand where the district court "equat[ed] facts sufficient to *allow* removal with facts sufficient to *require* removal within thirty days") (emphasis added). As such, Plaintiff must show that both citizenship and the amount in controversy were clearly revealed by the Complaint to trigger Defendant's thirty-day deadline for removal. For the reasons stated below, Plaintiff's Complaint failed to point to anything in the record that would make a sufficient showing on either basis.

**B. Defendant's Notice of Removal Under Diversity Jurisdiction**

1. Parties' citizenship

Defendant first argues that Plaintiff's Complaint is ambiguous as to Plaintiff's state of citizenship. Defendant notes that the Complaint identifies Plaintiff only as a San Jose, California resident and "business entity." Dkt. 18 at 21 (citing Dkt. 1-1 at 3–4). Defendant asserts that Plaintiff's allegation of California residency alone did not reveal sufficient facts to ascertain its citizenship for diversity jurisdiction purposes. *See id*. at 19 (citing Dkt. 1 at 7); *see also Crisp-Stoot v. Wal-Mart Stores, Inc.*, No. cv-18-10694, 2019 WL 1307735, at *4 (C.D. Cal. Mar. 22, 2019) (concluding that a Defendant was not put on notice of a Plaintiff's citizenship where facts "necessary to show citizenship," such as "intent to remain," were not affirmatively revealed).

To satisfy complete diversity, a corporation is deemed a citizen of the state where it is incorporated and where it maintains its "principal place of business[.]" 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its nerve center, defined as the place where the corporation's high-level officers "direct, control, and coordinate the corporation's activities[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).

Here, this Court agrees that the Complaint did not adequately allege Plaintiff's citizenship as Plaintiff is not a natural person but a business entity with potentially multiple states of citizenship. Dkt. 18 at 20; *id.* § 1332(c)(1). Plaintiff's later identification of itself as "a California corporation" in the caption of its Motion does not cure the omission in the operative Complaint. Dkt. 18 at 21. Plaintiff nevertheless contends that a "simple search" of the California Secretary of State's records would have confirmed it has been a California corporation since 2016.[1] Dkt. 14 at 5. Yet, Plaintiff's use of extrinsic records to establish its citizenship underscores that the Complaint itself did not disclose it. Moreover, the California Secretary of State's website does not address Plaintiff's principal place of business, a necessary element in establishing a corporation's state of citizenship for diversity jurisdiction purposes. *Id.* § 1332(c)(1). Thus, Plaintiff's Complaint did not plead the facts needed to support a clear citizenship allegation, such that Defendant was on notice of the action's removability to federal court.

2. <u>Amount in controversy</u>

Defendant further argues that Plaintiff's Complaint is indeterminate as to the amount in controversy because the Complaint does not provide the specific values needed to calculate statutorily required deductions of Plaintiff's damages. See Dkt. 18 at 10, 22–25. The Song-Beverly Act provides a variety of potential remedies, including actual damages, a civil penalty "not [to] exceed two times the amount of actual damages" and attorneys' fees. *See* Cal. Civ. Code § 1794(b)–(d). Actual damages are measured by the "amount equal

[1] In making this argument, Plaintiff relies on information that is not properly before the Court. However, the Court takes judicial notice of the information presented on the California Secretary of State's website. *See Gomez-Vigil v. I.N.S.*, 990 F.2d 1111, 1115 (9th Cir. 1993) (Aldisert, J., concurring) ("A court may take judicial notice of facts without prior notification to the parties, so long as the court subsequently provides an opportunity to rebut the noticed facts[.]"); *see also Sec. & Exch. Comm'n v. Plaza Home Mortg., Inc.*, No. ED CV 18-cv-00866, 2018 WL 4207543, at *2 (C.D. Cal. Aug. 31, 2018) ("The Court may also take judicial notice of the results from the California Secretary of State Business search.").

to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." *Id.* § 1793.2(d)(1).

Courts within this District have previously ruled that actual damages are not determinable, and that the thirty-day timeline to remove remains untriggered until a plaintiff serves the opposing side a document revealing "information as to the amount actually paid for the vehicle," as well as "information from which the vehicle's mileage use offset can be determined." *Covarrubias v. Ford Motor Co.*, No. 2:25-cv-00328, 2025 WL 907544, at *3 (C.D. Cal. Mar. 24, 2025); *see also Jones v. FCA US, LLC*, No. cv-22-859, 2022 WL 1154534, at *2–3 (C.D. Cal. Apr. 18, 2022) (finding defendant's calculations "speculative" where defendant relied on "total sale price" of vehicle and did not account for the mileage offset); *Fang v. Ford Motor Co.*, No. 1:22-CV-0561, 2022 WL 3444715, at *5 (E.D. Cal. Aug. 17, 2022) (concluding that removal was timely in part because defendant was not "required to speculate as to the purchase price or the applicable mileage offset to calculate [p]laintiff's damages and the amount in controversy with the limited vehicle information provided in the complaint"). Thus, absent any specific allegations of the dollar value or applicable measure of the claims, minimal allegations of the make and model of the vehicle, and broad categories of damages are insufficient to trigger the removal deadline. *See, e.g.*, *Pastrana v. Nissan N. Am., Inc.*, No. 8:24-cv-00515, 2024 WL 2817533, at *2 (C.D. Cal. June 3, 2024) (concluding that thirty-day deadline was not triggered where "the [c]omplaint [did] not list a dollar amount corresponding to the damages").

In this case, Plaintiff asserts that Defendant should have known the market value of vehicles it sells. *See* Dkt. 14 at 9. Plaintiff points to three facts to support its claim that the jurisdictional threshold amount was ascertainable, despite acknowledging no numerical value was provided in the Complaint: (1) the purchase agreement attached to the Motion stated the car's purchase value as $115,974, (2) Defendant was in possession of invoice records from January 22, 2021, which stated a value of $60,630.00, and (3) "both the caption page and accompanying Civil Case Cover Sheet expressly indicated that the claim

was being brought under the state court's unlimited jurisdiction (seeking damages above $35,000.00)." *See* Dkts. 14 at 6, 15; 19 at 2. Plaintiff emphasizes that Defendant knew or could readily ascertain the value of the Sierra based on these documents to trigger the removal deadline. *Id.*

As to the first point regarding the sales agreement, the Ninth Circuit has held that a defendant is "not obligated to supply information which [the Plaintiff] ha[s] omitted. . . . " *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013). That Plaintiff did not include the purchase contract in its Complaint does not place the onus on Defendant to bring forth that information in order to calculate a potential damages amount. Indeed, the Ninth Circuit relied on *Harris* to specifically reject the argument that a defendant "[s]hould have consulted its business records to identify a representative valuation." *Id.* Even if Defendant had documents in its possession from which it could approximate the amount in controversy, it was not required to "rely on pre-complaint documents to ascertain whether a case stated by an indeterminate initial pleading is actually removable." *Carvalho v. Equifax Inf. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010).

Plaintiff's second assertion is even less convincing. Not only does the invoice valuation proffered by Plaintiff predate the Complaint by four years, but this argument was raised for the first time in reply and is thus improperly brought before the Court. *See United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived."). As such, this Court exercises its discretion in not considering this argument.

Regarding the caption page and Civil Case Cover Sheet, the information provided on these documents is similarly inconclusive as to the alleged amount in controversy. Particularly, there is no indication that Plaintiff checking a box on a standard state court form to demand remedies under the state court's unlimited jurisdiction is tantamount to alleging the total amount in controversy or the amount demanded for actual damages. *See e.g.*, *Martinez v. Gen. Motors, LLC.*, No. 2:25-CV-07208, 2025 WL 2926885 at *5 (C.D. Cal. Oct. 15, 2025) ("[T]he Court concludes that the caption page and Civil Case Cover

Sheet were insufficient to trigger Defendant's 30-day deadline for removal."); *see also Longoria v. Ford Motor Co.*, No. 2:22-cv-07560, 2022 WL 16961482, at *3 (C.D. Cal. Nov. 16, 2022) ("Yet the Civil Cover Sheet for Plaintiff's Complaint did not assert that his 'damages' exceed $25,000: it stated only that the 'amount demanded exceeds $25,000,' and did not specify what this amount includes."). Indeed, the alleged $ 35,000 still falls below the $75,000 threshold for diversity jurisdiction. *Id.* § 1332(a). Without further specificity as to the necessary values and the measures applied, Plaintiff's allegations fall below the standard required to affirmatively reveal facts capable of putting Defendant on notice of removability.

Accordingly, because the actual damages cannot be determined from the Complaint, it follows that the civil penalty, which is a multiple of actual damages, will likewise be indeterminable. *See Leigh v. FCA US LLC.*, No. 8:21-cv-00316, 2021 WL 4551864, at *3 (C.D. Cal. Oct. 5, 2021) (concluding that an "estimate of civil penalties [was] unsupported and speculative" where actual damages were uncertain because "civil penalties under the [Song-Beverly] Act are based on actual damages").

In sum, for the aforementioned reasons, the amount in controversy could not be immediately discerned or calculated from the information provided in the complaint.

**C. Timeliness and Propriety of Defendant's Removal**

Because the Complaint made neither citizenship nor the amount in controversy clear on its face, it did not trigger the first thirty-day deadline under § 1446(b)(1). Moreover, the record does not indicate that the Plaintiff served to the Defendant any amended pleading, motion, order, or "other paper" that made removal "unequivocally clear and certain." *Dietrich,* 14 F.4th at 1095. The Court therefore finds no second 30-day removal clock was invoked under §1446(b)(3). With neither window imposing a duty to remove under § 1446, Defendant was entitled to file its notice of removal on the basis of its own investigation, which it did within the one-year limit of § 1446(c). See *Roth,* 720 F.3d at 1125. Defendant has met its burden of showing that removal was timely.

As to Plaintiff's argument that Defendant's removal fails for lack of identifying the date on which it obtained the Sierra's retail installment sale contract, the Court once again finds *Harris* instructive. *See* Dkt. 19 at 4–6. A defendant's subjective knowledge does not start a removal clock; indeed, the bright-line standard on which Plaintiff's own Motion depends forecloses any inquiry into when a defendant came to know the grounds for removal. *See Harris,* 425 F.3d at 694. Defendant was obligated only to refrain from "running afoul of either thirty-day deadline" and to remove within one year of commencement of the action under § 1446(c). *Roth,* 720 F.3d at 1125. The Court finds it properly did so.

By establishing diversity jurisdiction through citizenship and amount in controversy, and by timely filing its Notice of Removal, the Defendant's removal was both substantively and procedurally proper.

**D. Attorney's Fees and Costs**

Finally, Plaintiff seeks an award of the attorney's fees and costs it incurred by pursuing this Motion. Dkt. 14 at 12–13. However, 28 U.S.C. § 1447(c) only authorizes an award of fees and costs where a court grants a motion to remand. See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Here, because Plaintiff's Motion is denied, no fees or costs are warranted.

## III. CONCLUSION

For the aforementioned reasons, the Motion to Remand [14] is **DENIED.**

**IT IS SO ORDERED.**

Dated: August 3, 2026



HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE